Can you hear you? This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Mary S. Shostak presiding, along with Justices Anne B. Jorgensen and Liam C. Brennan. The case is number 220306, Wells Fargo Bank, Plaintiff-Appellee v. Therese M. Crowley, Defendant-Appellant. Arguing for the Appellant, George H. Olson. Arguing for the Appellee, Jeffrey Paipoli. Mr. Olson, are you prepared to proceed? Yes. You may proceed. May it please the Court, George H. Olson of OLSCN on behalf of Defendant Therese Crowley. Your Honors, this case arises from a systemic fraud in which plaintiff has been an active participant. This is a fraud case. It's not a routine foreclosure case. Saying this is a fraud case is not just puffery. The Defendant's fraud claim survived Wells' multiple motions to dismiss in front of multiple judges. It's not about a Defendant trying to stay in her house for free. It's simply about a responsible, hard-working individual homeowner trying to keep her home in the face of a disaster created by a financial community using the very low modification tools that the government imparted for people who are trying to save their homes. Now, I came into this case rather late. And much of the record was already established. And I freely admit that in waging a fight on her behalf, there was a failure to comply with local rules at the very end on summary judgment. I respect the need for local rules, which are required for judicial efficiency. Mr. Olson, even though you came into the case late, you are left with, you are, at the appellate court, you're left with the record that was made below. How do you get past this failure to comply with the local court rule? Well, Your Honor, I believe that, as I will be able to demonstrate here, there are sufficient evidence of material fact questions in the record that necessitate giving my client her day in court and have a full hearing on the material fact questions. But failure to comply with that local court rule, basically the facts are deemed admitted, aren't they? Well, that's certainly what the judge held, and that's certainly what the rule provides. But I believe that there are exceptions to that. As a matter of fact, in looking at this, and I constantly look at it, there's a recent case in the 1st District. It's entitled In Re Jeruzic. I don't, I mispronounced the name, but let me give you the site. It's 2021 Ill App, 1st, 191732. And in that case, it's a marriage dissolution case, but there was a motion to abate a maintenance judgment or maintenance opinion. And there is a local rule in Circuit Court of Cook County requiring in a connection with that a motion to abate, the movement must file a affidavit showing changed circumstances. Notwithstanding that rule, the court entered the modification and the abatement. And on appeal, the movement said, look, this maintenance agreement should never have been modified because she didn't comply with the local rule. Now I'll admit it doesn't strike to the very heart of the question, but it gives credence to the notion that the local rules may in fact in certain circumstances have some exceptions. And in this case, the appellate court ruled that the affidavit local rule didn't reply because they could characterize the judgment as something other than a maintenance abatement. But how do we apply that to this situation? Well, we apply it to this situation based on the facts that I'm about to set forth in terms of the material fact question that are glaring. They're in the record and certainly mandate, I believe, that notwithstanding not filing a statement of uncontested facts, that having presented the court with the material fact questions leaves me no other conclusion, but that she should be given an opportunity to have a trial. Now, it wasn't as though we didn't present a statement of facts. In fact, we presented a dossier of the documents that showed that there were material fact questions, clearly not in the form required by the rule. And clearly and understandably, the trial judge, for whom I have great respect, was exasperated that he had to look at all of that information and so simply relied on the local rule as a way to enter the summary judgment. Well, you had intimated in your brief that something to the effect of that she should have been treated differently or you shouldn't look at the local court rule to determine how people follow them. I'm not saying it as clearly as you did, but my question to you is should the rules and local rules change depending on what parties appear before them? No. No, I don't believe that I meant to suggest that. They should be applied based upon the facts, not necessarily parties. Now, if I may, I'd like to proceed with exposition of what some of the material fact questions really are. You've seen them in the briefs, but it merits discussing them because they are so significant and they are so compelling. Now, first of all, in this overwhelming record, there's clear evidence that there's a question about this wonderful $114,000 payment that was made to Wells from Fannie Mae. Wells continuously refers to that and says that they've been answered for the questions regarding that statement or that payment by referring to it as a batch payment for both now and should. It just doesn't ring true when plaintiff admits that they never answered the questions that the courts have been asking, including Judge Mark Coulier's order of June 21, 2017, where she wanted a detailed explanation of what were those payments all about. And it's not a wild theory. The very claim that's intimated here is discovered, or is amplified, by the existence of a SIGTARP report that, or rather an OIG HUD report that amplified exactly the kind of concerns that the regulators had that Wells was processing reimbursement payments for defaults. Secondly, we have the whole- How did they respond to Judge Mark Coulier's request? They kept replying by just asserting, we've told you that it was a batch payment for these Hope Now reimbursements. You've got $150 of it. We're not going to tell you what the rest of the money was for because you're not entitled to know about the other accounts. They hung on that inconsistently. And Judge Mark Coulier specifically wanted the details. Who made the payment? Who requested the payment? Where was the request from the bank to Fannie Mae? Now, in addition to the improper- Mr. Olson, if I may, what was contained in the DECOD affidavit as it relates to that? Well, the affidavit, I believe, simply reasserts the claim that it was nothing more than a Hope Now payment. I don't recall precisely not looking at the affidavit for a couple of days. Now, in addition to, as I was saying, there are multiple modification process issues where Wells had purposely failed to disclose that Fannie Mae made an offer. They did improper accounting, highlighted by the SIGTARP report. And again, these are no wild theories. They're all wrapped up into the same pattern of conduct that the National Attorney General's consent judgment in 2014 found. But, you know, my time is running short. So let me go to trying to put it in a time sequence context. This is an individual homeowner who was never in default on her payments. She had proactively gone to Wells Fargo in April of 2009 because she had serious medical issues, surgery, and had medical expenses and was confronted with the prospect of a declining mortgage market. So she went to Wells and sought assistance. On August 21st, she did her first application of 2009. They denied it in October because it turned out there was income amounts and false, long statements of income amounts and long appraisal amounts. So she challenged it. She reapplied November 13th, second application. Again, Wells denies it this time. He denied it because they said she had $2,300 credit debt per month when she didn't even have any credit debt. And then it gets interesting. In February 16th of 2010, she filed her third application. On March 2nd, and this is all now looking back at the record, on March 2nd, Wells reported to Fannie Mae that they were projecting an April 1 foreclosure date. At or about that same week, unbeknownst to Crowley, Fannie Mae actually approved a modification that was never disposed to her. And then Wells subsequently denied the third application. But they offered a three months forbearance agreement. Did they need to comply with that forbearance agreement? Wasn't there language in the forbearance agreement that said they don't have to accept the lesser payments? That's true. There's no question about that. But she, in good faith, again, trying to retain her ownership in her house and trying to maintain her good credit, which she had a sterling credit record. She went ahead and she signed that forbearance agreement and made those three payments. Unbeknownst, and this is where the payment comes in, unbeknownst to Crowley at the time, and well after, it was discovered well after the event. On April 22nd, Fannie Mae makes this payment, processed through Crowley's account, not to pay off the mortgage, but clearly what appears to be a reimbursement for default insurance. Subsequently, on May 26th, 2010, Crowley gets a call from Wells saying your paperwork's ready. Well, she thought she would have a modification paperwork. That never came. And so she submitted a fourth application. She got a call, actually in July, and she got a call, said you just need to reapply again. She submitted the fourth application. On August 2nd, they offered her the non-HAMP modification, which I know plaintiff has referred to repeatedly, but she rejected it. That's not the case. That application or that modification had a startling $24,000 additional capitalized interest in it. And she challenged that. She in fact went, that's when she went to the HUD counselor and the HUD counselor said, gee, I've looked at all these applications. Something's funny here. You better go see a lawyer, which she did. And at the same time, on August 31st, Wells didn't, she didn't reject the offer. Wells simply withdrew the offer. And then we dive into the litigation. You have a complaint. You have a motion, an answer, affirmative defense and counterclaim, which survived the motion to dismiss. Then you have a 2011 to 2019 discovery war. And this is where Wells was bludgeoning his defendant with discovery battle and submitted her to endless, even disparaging references to her character and her motives. Finally, she figures out, gets some of these facts together and pulls together an amended fraud counterclaim, which again, survived the motion for dismissal. Ultimately. Mr. Olson, your time is up. So would you start to wrap up at this point? You'll have time for rebuttal, sir. Yeah. Here's where we're at. This case just simply begs questions. In addition to the material fact questions, we have to ask, why are we even here? Because she's just another one of these consumers that's subjected to this fraud, systemic fraud. Why, in the face of significant material fact questions, should she be deprived of her opportunity for a fair trial? It's just not fair. But mostly, why would Wells, a bank with almost $2 trillion in assets, wage an all-out discovery war against this individual homeowner to prevent her from modifying and paying her $205,000 mortgage? It makes no sense. I have nothing further. Thank you, sir. You'll have time in rebuttal. Mr. Capulli. I had to unmute myself. My apologies. You had to unmute yourself. Yes. Thank you, Your Honors. Jeff Pipoli from Mayor Brown on behalf of Wells Fargo. Your Honors, as you're aware, this case, and I agree with Mr. Olson on this point, does have a long and tortured history. It was pending in the circuit court for the better part of a decade. The appellate record spans nearly 6,000 pages, which is certainly quite long for a case such as this. But this isn't actually a very complicated case at all. It is. Mr. Pipoli, before you proceed, I think we're all very anxious to hear about that Fannie Mae check. Mr. Olson indicates that the court had asked, I think it was Judge Merclier, had asked the plaintiff to set out in detail where those monies went and that that was never done. Can you expand on that? Certainly, Your Honor. So, for one thing, it was done in the documents that were produced relative to Ms. Crowley's accounts. There are reasons, and this is in the transcripts in the trial court, there are reasons why Wells Fargo cannot disclose where each individual $150 batch payment goes because that would require disclosing information about other people's accounts who are not parties to this litigation. And there are certain banking regulations that would open Wells Fargo up to all sorts of problems if it starts, you know, parsing through hundreds and hundreds and hundreds of individual people's accounts and back screens, which, you know, it's where the accounts are, where the information is held. But if you look at C-1862 in the record, which is a document that Mr. Olson and Ms. Crowley attached to their response, I believe it's to their amended counterclaims, you will see that it reflects the check coming in to Wells Fargo. And then immediately below that, there is a check request for $150 to be applied to Ms. Crowley's account. This information is in the documents. It was in the documents that were produced. You know, Wells Fargo could not engage in the phishing expedition that Ms. Crowley's lawyers, including Mr. Olson, wanted us to go on. Why not in camera inspection? Why not submit them under seal? I think sitting here today, I don't know the answer to that question, Your Honor. I wasn't on the case at the time, but my strong inclination is that merely disclosing those documents absent could open Wells Fargo up to liability. And frankly, I think we had given Ms. Crowley all the information that we had about the Hope Now check relative to her account. And there's certainly information in the record that confirms that this was a batch payment reimbursed for the Hope Now counseling that she indisputably received. That is in our brief. The record citations that show that are in our brief. The other thing that I've just never been, and I'm trying to be as fair about this argument as I can, but it's never been clear to me what exactly the theory of the case is with respect to this payment. Fannie Mae, and Wells Fargo pointed this out in the circuit court, is Fannie Mae is the ultimate economic beneficiary of this loan. It is unclear to me why Fannie Mae, the ultimate economic beneficiary, would reimburse the servicer of the loan for half the mortgage, for half the loan amount. I don't understand that. I've never understood what the theory of that case is. It's not clear to me from the briefing, quite frankly. And so I'm left struggling with exactly why this is as important as Ms. Crowley seems to think it is. When it is undisputed that she received Hope Now counseling, and it is reflected in the documents that $150 of that went to her account. Well, she also talks about, let's talk about the HAMP, the application and her being denied that application. And she indicates there's absolutely no justification in denying her that application. Let me ask you this. Does Dodd-Frank apply in this case? I don't think so. Well, it's unclear to me, Your Honor. I think as to the extent it's raised as a defense of the foreclosure, which I think it is, I don't think it does. But, you know, again, I'm a little bit unclear as to what the theory is here. Wells Fargo set forth in its brief the exact reasons why she was denied. She appealed those denials. Ultimately, she was offered a non-HAMP modification in August. So I don't want to get these things twisted, Justice Shostak. It's, you know, the modification denial that, according to Ms. Crowley, prompted all this litigation was a non-HAMP denial in the first place. So that was the August modification. Dodd-Frank would not apply. Correct. That was a non-HAMP modification. And what's very interesting to me, and I noticed this as I was going through the record last night, Ms. Crowley disputes that she was in, and this actually isn't about the non-HAMP modification. This is about the forbearance plan. Ms. Crowley disputes the fact of default as of April 1st, 2010. But in the modification, excuse me, in the forbearance document, which is C-1860 in the record, it states, and Ms. Crowley agreed, that as of March 16th, 2010, and I quote, the indebtedness in the reference loan is in default. So, you know, just going back to first principles here, Your Honor, there is no dispute that at bottom here, what happened was, you had a homeowner who stopped paying their mortgage payments, or who was about to be, who was in default. Her last pay, she was in default as of April 1st, 2010. That gave Wells Fargo, the servicer of the mortgage loan, the right to foreclose, which they did a year later. Nearly a year later. Ten months later. It wasn't until early 2011 that we filed the, that Wells Fargo filed the foreclosure complaint. I can turn if, if, if the court is, is, unless the court has any more questions about this, to a couple more. Okay. Just turning to the local rules issue, I think it's worth pointing out that the, that the, that Ms. Crowley's opposition to Wells Fargo's summary judgment motion, and there was only one summary judgment motion, by the way, I don't know why we refer to multiple motions. For summary judgment in the briefings. Totally unclear to me why that's the case. There was one motion for summary judgment, which dealt with both the defenses to foreclosure and the counterclaims all in one fell swoop. That was in 2019. Mr. Olson was counsel for Wells Fargo at that time, and he was aware that the, that the, and Ms. Crowley was aware that the local rule, which mirrors the Northern District of Illinois's local rule almost identically applied. Wells Fargo complied with that local rule. Ms. Crowley did not. Under that local rule, all the facts in our statement of facts are deemed admitted, including the date of default, including the authenticity of the mortgage note. Include every virtually everything in this case is resolved on the basis of Ms Crowley's failure to abide by the local rule and submit an undisputed state or submit a counter statement of facts. I disagree fundamentally with Mr Olson that these local rules don't matter. And that we, and that they shouldn't be applied as they're written. I think we cited in our brief Curtis v. Costco wholesale from the Seventh Circuit. Again, the court is obviously free to look at those Seventh Circuit cases because the local rule mirrors the Northern District's local rule identically. They talk about the important function of this local rule for narrowing the issues for trial. And for narrowing the issues, not for trial, I'm sorry, but this is summary judgment, but narrowing the issues for the court, making it clear what facts matter and what facts don't. Frankly, to prevent exactly what we've got in this case, which is a very long record, very complicated history, probably unnecessarily so. The reason that you have these statements of material facts is to tell the court, hey, this is what matters here. So that you can't just continually throw facts at the wall, change positions, oscillate back and forth between, you know, and change and evolve theories. That's the point of litigation is to narrow the issues, narrow the facts. And so again, the Seventh Circuit and Curtis said that the purpose of this rule is to have the litigants present to the district court a clear, concise list of material facts. It is the litigants duty to clearly identify those facts and a litigant who denies those material facts is required to provide admissible evidence that supports the denial in a clear, concise manner. None of that happened here. And the circuit court was clearly within its rights to take the local rule as written, apply it and determine summary judgment on that basis. It was not as to form as appellant's brief claims. It was not a technical grant of summary judgment that didn't get to the facts of this case because the facts were in Wells Fargo statement of material facts and were deemed admitted by Ms. Crowley. Why doesn't the exception apply that counsel alluded to the first district case? Why isn't there an exception that would be applicable here? Well, I haven't seen that case. I don't believe it's in the briefing. As Mr. Olson, I think, said he just saw it a couple of days ago. So if you'd like supplemental briefing on that question, I'm happy to. I'm happy to do it. My instinct sitting here is that as I was listening to Mr. Olson, I think I heard him say that it's a different type of rule that does not go to the heart of the case. This rule does go to the heart of the case. This rule is about narrowing the facts for summary judgment. It is, frankly, your honors, this is pretty basic summary judgment stuff. This is what lawyers and parties are expected to do in the context of summary judgment, a dispositive motion in civil litigation. So, again, I haven't seen that case. If you'd like me, I don't think it's in the briefing. I'm happy to do a supplemental brief if the court is interested. But my instinct sitting here today is that because we're talking about sort of first principles of summary judgment motion practice here, and given the both importance of summary judgment and the steps counsel and litigants are expected to go through to satisfy their obligations to the court, my guess is that that is a basis to distinguish it. But again, I'd have to look at the case more closely. Mr. Popoli, if we need you to brief that, we will let you know. Your time is almost up. So, before your time runs, and I'm sure that Mr. Olson may address this on his rebuttal, I want to talk to you just briefly about the standing issue. Was there a copy of the note attached to your complaint? There was, and Ms. Crowley's answer to the complaint admitted that it was a true copy, that obviously under Corzine and any number of other cases confers prima facie standing, that it was incumbent upon Ms. Crowley to rebut. But even more telling than that, Your Honor, we produced the original note in open court. And we offered to produce it for inspection on multiple occasions over multiple years. Finally, my colleague, Mayor Brown, Mr. Alferman, I think, frankly, just got fed up and brought it to court just to show the court and to show opposing counsel, that ends this inquiry. That was the original note. It was the original note with the ink, not a copy. It was in open court. And as plaintiff's briefing admits, that was a bearer note at that point, which means that whoever bears it physically has possession, has standing to foreclose. And yet, even on appeal, despite it being produced in open court, despite it being attached to the complaint, despite the admission in the answer, still questions the authenticity of the note, even on appeal, suggesting that it was a fraudulent document, even though there's a court order saying original note produced for inspection. I'm frankly not quite sure what to do with that. I don't know what else we should have done at that point. And unless the court has any more questions, I believe my time is up. Great. Thank you, sir. Justice Jorgensen, any questions? No additional questions. No, thank you. Justice Brennan? No, thank you. Okay. Thank you, counsel. Mr. Olson, now it's your opportunity for rebuttal. And before you do that, why don't you address the standing issue that we ended up with here? Well, the standing issue, first of all, we did not allege that the note was fraudulent. We alleged and specifically stated that the assignment document that showed up in that folder that they presented in court was fraudulent. It was obviously one of these fraudulent robo-signed assignments, kind of at the last minute to make sure that they covered their tracks, that the note actually was a bearer note in the hands of Wells. So we've never alleged that that note itself was fraudulent. It was the assignment document that we're referring to. And as to the standing issue, it does go back to this question of whether or not there was really a default. To allege, what we've alleged in our pleadings is that she was not in default as of April 1, that that was a projected date, projected to Fannie Mae for reasons that become somewhat unclear. Now, with respect to the case that I referred to, that isn't an old case that I failed to find. I failed to mention that the first district case was issued after the briefing was closed. It was issued on March 5th of 2021. So it's a brand new case. In the future, if you plan on citing that case at oral argument in the future, you might want to send a copy to your opposing counsel and to the court prior to oral argument. I will ensure to do that, Your Honor. Secondly, and going to the question that was raised, why in the world they didn't produce the information? It isn't so much a matter of noncompliance with banking regulations. The real issue is the court wanted the information. And as one of the justices pointed out, that could have been done in camera, that could have been done under seal, and it never was done. And finally- Did counsel ask that that be done? Counsel at the trial court level, did they ask that they review that in camera? Did they file a motion to compel? My recollection in reviewing the record is that the prior counsel specifically asked, suggested that and asked that, said, you know, why don't you just produce a list in camera? Why don't we do this before the judge in camera? And I'm sure the prior counsel made that request during one of those hearings, so many hearings. And finally, I want to emphasize, I never said that the local rules are not important. But in the context of the motion for summary judgment and on appeal, looking at all of the affidavits, the records, the pleadings, the five or six main issues that I've outlined are glaring material fact questions, which in fairness to this client, ought to be brought back before trial. I have nothing more. Any further questions from Justice Jorgensen? No, thank you. Justice Brennan? No, thank you. All right, thank you. Gentlemen, thank you so much for your time here today. We appreciate it. We will take the case under advisement and render a decision in due course. Thank you, Your Honor. Okay, court is in recess.